(18 App. Div. 216.)

## EDALL v. NEW ENGLAND R. CO.

(Supreme Court, Appellate Division, Second Department. June 8, 1897.)

RAILROADS—INJURY TO EMPLOYE—NEGLIGENCE.

Where the drawheads of two cars met end to end, the fact that one of them was so much lower than the other that an employé was unable to effect a coupling did not render the company liable for injury to his arm, which was caught between the drawheads; the danger being no greater than if said drawheads had been precisely on a level.

Appeal from supreme court, Orange county.

Action by Joseph Edall against the New England Railroad Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Julius F. Workum, for appellant.
John M. Gardner, for respondent.

WILLARD BARTLETT, J. At the time when the plaintiff received the injuries which gave rise to this action, he was in the employment of Messrs. Thomas C. Platt and Marsden J. Perry, as receivers of the New York & New England Railroad Company, performing the duties of brakeman and other duties in the operation of the said railroad at Fishkill Landing, N. Y. He alleged in his complaint that while so engaged he had occasion to and did enter between two cars to make a coupling, and while so doing the bumpers or deadwoods or ends of said cars unexpectedly and violently came together in such an unusual and careless manner as to jam and seriously and permanently injure the plaintiff's arm. He further alleged that:

"The drawhead or other coupling appliance attached to one of said cars was so greatly loose and out of repair, and in such defective and dangerous condition, as to cause said injury, and had negligently and carelessly been suffered and permitted to so remain for a long time by said receivers, their agents or employés."

The proof in behalf of the plaintiff, viewed in its most favorable aspect, does not sustain the allegation above quoted, or tend to show that the accident was caused by any negligence whatever on the part of the receivers. The case was argued before us by the learned counsel for the respondent upon the assumption that the drawheads, which are linked together in coupling the cars, and should meet end to end for that purpose, were so placed on the cars which the plaintiff was endeavoring to couple that one of the drawheads slid over the top of the other, thereby bringing the adjacent bumpers together in

such a manner that the plaintiff was unable, by the exercise of due diligence, to extricate his arm. If such had been the evidence, the facts would closely resemble those which were presented in the case of Goodrich v. Railroad Co., 116 N. Y. 398, 403, 22 N. E. 397, where the drawhead of the moving car was defective and hung lower than it should have done, passing under the drawhead of the stationary car, and permitting the deadwoods to come together. In the opinion in that case the drawheads or coupling appliances of the cars are erroneously denominated "bumpers," but an examination of the appeal book shows that Brown, J., referred to a defective drawhead when he said that a defective bumper was shown to have been the proximate cause of the accident. In the case at bar it is true that in one part of his testimony the plaintiff conveyed the idea that when he was about to couple the cars one of the drawheads went over the top of the other; but he subsequently corrected this statement, and swore expressly and positively to the contrary, saying in response to a question from the court as to whether one drawhead passed under the other: "No, sir; they didn't pass one over the top of the other. It came so much higher." And in another place he testified: "I don't say it passed under. I say it was so much higher than the other that the link didn't catch. I wasn't able to put the link in. The drawheads met." Now, it is quite evident that if the drawheads thus met end to end, although not precisely on the same level, the cars must have approached one another just as closely and no more so than would have been the case if the drawheads had actually been on the same level, so that the link in one of them would have entered the aperture on the other. A person attempting to couple the cars might very well be injured if they unexpectedly came together by reason of the fact that one of the drawheads was so low as to pass under the other; but, if the ends came together in the manner described by the plaintiff, it is impossible to see how his position was any more dangerous or how he was exposed to any greater or different risk of injury than that which would have existed if he had been able actually to effect the coupling. The space in which he had to work was no smaller than it would have been if the drawheads had met so as to permit the insertion of the link. Taking the whole of the plaintiff's testimony together, I do not see how it is possible to hold that the injury which he suffered was due to any defective condition of the drawheads or other appliances for coupling the cars.

The only other question in the case relates to the liability of the defendant corporation as the successor to the rights and liabilities of the receivers. The proper determination of this question depended upon the construction of a decree and a number of other papers on record in two suits in the circuit court of the United States for the Southern district of New York. The trial judge erred in allowing the jury to pass upon the legal effect of those records. Their construction was a question for the court, and not for the jury. This error, however, did no harm, inasmuch as we think the jury interpreted them correctly. Considering the proceedings of the litigation in the federal court as a whole, we think it was the intention to make the defendant liable for all unsettled and disputed claims

against the receivers, which they would have been justly obligated to pay if the property had remained in their hands. Any further discussion of this point, however, is hardly necessary, since the proof, if the views which we have already expressed are correct, would fail to establish any liability even against the receivers.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.